**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

BARBARA LITTLETON )
)
Plaintiff, )
)
vs. )
)
OPTION ONE MORTGAGE )
CORPORATION; OPTION ONE )
MORTGAGE SERVICES, INC. )
and DOES 1-5, )
)
Defendants. )

FILED: APRIL 14, 2008
08CV2122 EDA
JUDGE CONLON
MAGISTRATE JUDGE VALDEZ

**JURY DEMAND**

**COMPLAINT**

**INTRODUCTION**

1. Plaintiff brings this action against a "subprime" mortgage lender, its assignees and a mortgage broker to secure redress for predatory lending practices in violation of the Truth in Lending Act ("TILA") and TILA's implementing regulations.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction under 28 U.S.C. Sects. 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental) and 15 U.S.C. Sect. 1601, et seq. ("TILA").

3. Defendants transact business in the District and are deemed to reside here.

**PARTIES**

4. Plaintiff Barbara Littleton owns and resides in a home located at 8402 South Euclid Avenue, Chicago, Illinois 60617. She is an ordinary consumer.

5. Defendant Option One Mortgage Corporation ("Option One") is a California corporation that does business in Illinois. Its principal place of business is located at 3 Ada, Irvine, California 92618. Its Illinois registered agent and office are CT Corporation System, 208 S. LaSalle Street, Suite #814, Chicago, IL 60604.

6. Option One is or was engaged in the business of originating sub-prime mortgage loans. Option One originated more than 26 mortgage loans in 2007. On information and belief, Option One is the current legal and/or beneficial owner of plaintiff's loan

7. Defendant Option One Mortgage Services, Inc. ("Option One"), is a Massachusetts corporation with its principal place of business located at 3 Ada, Irvine, California, 92618. Its Illinois registered agent and office are CT Corporation System, 208 S. LaSalle Street, Suite #814, Chicago, IL 60604.

8. Option One Mortgage Services, Inc., was or is engaged in the business of servicing sub-prime mortgage loans. On information and belief, it is the current servicer of plaintiff's loan. As such, it claims the right to collect payments, report to credit bureaus and pursue foreclosure. It is named as a necessary party only.

9. If Option One is not the present owner of plaintiff's loan, as alleged, the current actual owner(s) is/are named herein as Does 1-5. Ownership of such loans is not a matter of public record.

**FACTS**

10. Prior to July 26, 2007, plaintiff received a phone call at her home from Ian Tepper, the President of Wall Street Mortgage Acceptance Corporation ("Wall Street Mortgage"), a mortgage broker that, at that time, was licensed by the Division of Banking of the Illinois Department of Financial and Professional Regulation ("Division of Banking").

11.    During the initial call, after asking plaintiff questions about her income and outstanding debts, Tepper made an appointment to come to plaintiff's home. He asked plaintiff to have documentation of her income ready to show him. Plaintiff believed that the purpose of the visit was for him to get information for a loan application and to provide her with a quote of the best loan terms he could offer her.

12.    At the meeting in her home, plaintiff provided Tepper with her recent paystubs from both of her jobs and with W-2s for 2005 and 2006. She gave him the originals. He said he would make copies and return them to her.

13.    Tepper told plaintiff that he would try to get her a loan with an interest rate below 9.0% but that, in any event, she would pay less than she was paying on her then-current mortgage loan. Tepper also told plaintiff that her monthly payment, consisting of principal and interest and escrow amounts for real estate taxes and insurance, would be approximately $900.

14.    At the meeting, plaintiff signed a number of documents. At the end of the meeting, Tepper told her, "I'm pretty sure you'll get this mortgage." He said he would call plaintiff in approximately three days.

15.    Before Tepper left her home, plaintiff asked Tepper for copies of the documents she signed. Tepper told her that he did not bring any extra copies with him but that he would mail her copies when he got back to the office that day. It was a Saturday. He told plaintiff she would have her copies through the mail by Monday.

16.    Plaintiff never received any documents in the mail or through any other means. In fact, plaintiff never saw nor heard from Tepper again. She never got back the originals of the personal documents she provided to Tepper. She was never provided with any

preliminary disclosures for the loan (such as a Good Faith Estimate or a preliminary TILA

Disclosure Satement).

      17.    Early in the following week, plaintiff had changed her mind and did not

want to proceed any further with the loan.  She phoned Tepper several times at the number on

the business card he left her.  She could not reach him, and he did not return her calls.  Within a

week, the phone number she had for him had been disconnected.  Plaintiff also consulted an

attorney, who also attempted but could not reach or locate Tepper or Wall Street Mortgage.

      18.    Several days later, plaintiff received in the mail a check for cash.  In late

August or early September, 2007, plaintiff received a statement from Option One showing the

principal amount of a mortgage loan and requesting a first payment.  At that point, plaintiff

concluded that the loan was a "done deal" and that there was nothing else she could do but to

start making payments in order to avoid losing her home.

      19.    Upon receiving the first statement, plaintiff faxed a letter to Option One

requesting copies of all documents she signed for the loan.  Approximately two weeks later,

plaintiff received a few documents in the mail from Option One.

      20.    The documents plaintiff received consisted of shrunken copies of:

      a.    A Note  (Exhibit A);

      b.    A Mortgage (Exhibit B);

      c.    A HUD-1 Settlement Statement (Exhibit C);

      d.    A final Truth In Lending Disclosure Statement (Exhibit D); and

      e.    An appraisal.

21.     No other documents were included in the package plaintiff received. Among other missing documents, there were no copies of the federal Notice of Right to Cancel form.

22.     Tepper, Wall Street Mortgage and Option One gave plaintiff a "3/27" adjustable rate loan with a starting interest rate of 9.75% (Exhibit A). The rate enters its adjustable phase in August, 2010, at which time it may increase to 11.25%. (Id.). Thereafter, it may increase by 1.5% in each 6-month period, up to a maximum of 15.75%. (Id.).

23.     Plaintiff's initial payments under the loan were actually $1,153.00, and she recently received notice that the payment has increased (inexplicably) to $1,343.00. On information and belief, even the initial payment amount was higher than the payment plaintiff was making under her previous mortgage loans.

24.     The HUD-1 Settlement Statement indicates plaintiff was charged points and fees in the amount of at least $6,124.17 or 5.89 percent of the principal loan amount of $104,000. The points and fees included $1,685.00 to Option One (Exhibit C, lines 802, 812 & 813) and $3,095.00 to Wall Street Mortgage (Exhibit C, lines 803 & 808-810). On information and belief, total points and fees for the loan exceeded 6%.

25.     On November 9, 2007, the Illinois Secretary of State involuntarily dissolved Wall Street Mortgage. However, judging from its website (last checked April 14, 2008), it is still in business.

26.     In February, 2008, for no apparent reason Option One stopped sending monthly account statements to plaintiff.

27.     Plaintiff is current on her payments.

28. Because she was not provided with, at the time of "closing," any disclosures concerning the loan terms, nor copies of the federal Notice of Right To Cancel, plaintiff never had a meaningful opportunity to comprehend either (a) the loan terms or (b) her federal right to cancel the loan.

29. Because she does not have a full set of closing documents, plaintiff may seek leave to amend her complaint and to join additional defendants based upon documents and information she obtains for the first time through discovery.

**COUNT I – TRUTH IN LENDING ACT – INDIVIDUAL CLAIM**

30. Plaintiff incorporates paragraphs 1-29. This count is against Option One Mortgage Corporation. Option One, as servicer, is named as a necessary party only.

**RIGHT TO RESCIND**

31. Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. Sect. 1635 and 12 C.F.R. Sect. 226.23. Sect. 226.23 provides:

> **(a) Consumer's right to rescind.**
>
> > **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**
> >
> > **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

**(f) Exempt transactions. The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

## GROUNDS FOR RESCISSION

32. In connection with the loan, Option One or its agent failed to provide plaintiff with any federal Notice of Right to Cancel forms, in violation of 12 C.F.R. Sect. 226.23(b) above.

33. In addition, Option One or its agent failed to provide plaintiff with timely financial disclosures, in violation of 15 U.S.C. Sect. 1637, 12 C.F.R. Sect. 226.18 and the corresponding sections of the Official Federal Reserve Board ("FRB") Commentary on Regulation Z. Defendant did not provide plaintiff with any preliminary TILA Statement and did not provide her with a final TILA Disclosure Statement until months after the transaction was consummated.

34. Either violation alone is sufficient to confer on plaintiff the extended, three-year right to rescind the loan.

35. Plaintiff sent notification to defendants of her intent to rescind the loan (Exhibit E).

36. The loan has not been rescinded.

37. Under 15 U.S.C. Sect. 1641(c), the right to rescind may be exercised against "any assignee."

38. In addition, 15 U.S.C. Sect. 1635(g) provides:

> **Additional relief**
>
> **In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

       a. A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendants;

b. Refund of all finance charges, as required by the TILA rescission formula;

c. Statutory damages for the underlying violations;

d. Actual damages;

e. If appropriate, statutory damages for failure to rescind;

f. Attorney's fees, litigation expenses and costs; and

g. Such other or further relief as the Court deems appropriate.

**COUNT II – ILLINOIS CONSUMER FRAUD ACT – INDIVIUDAL CLAIM**

39. Plaintiff incorporates paragraphs 1-29. This count is against Option One Mortgage Corporation.

40. The Illinois High Risk Home Loan Act ("IHRHLA") defines a "high risk home loan" as "a home equity loan in which . . . (ii) the total points and fees payable by the consumer at or before closing will exceed the greater of 5% of the total loan amount or $800...." 815 ILCS 137/10. "Points and fees" include anything that is defined as "points and fees" under HOEPA, an amendment to TILA.

41. The IHRHLA imposes advance disclosure requirements for a loan in which the points and fees exceed the 5% threshold. Option One provided no advance disclosures to plaintiff.

42. In addition, plaintiff's loan does not comply with the IHRHLA, in that 815 ILCS 137/55 provides that " No lender shall transfer, deal in, offer, or make a high risk home

loan that finances points and fees in excess of 6% of the total loan amount." The total points and fees for the loan, exceeding 6%, were all financed.

43. The IHRHLA, 815 ILCS 137/135(b), provides that "Any knowing violation of this Act constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

44. Option One knowingly violated the HRHLA by charging, or authorizing the charging of, points and fees in excess of 6%, in violation of the IHRHLA, and by failing to provide the special advance disclosures required by the IHRHLA.

45. Defendant engaged in such conduct in the course of trade and commerce.

46. Defendant engaged in such conduct for the purpose of inducing reliance by plaintiff in the form of her proceeding, without proper information, with the loan transaction.

47. Plaintiff was damaged as a result.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendant for:

a. A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on all defendants;

b. Appropriate compensatory and punitive damages;

c. Attorney's fees and costs; and

c. Such other or further relief as the Court deems appropriate.

Respectfully submitted,

s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Social Justice Project,
208 S. LaSalle Street, Suite #1650
Chicago, Illinois 60604
Phone - (312) 345-1004
Fax - (312) 346-3242
al@alhofeldlaw.com

**JURY DEMAND**

Plaintiff demands trial by jury.

s/Al Hofeld, Jr.
Al Hofeld, Jr.

**NOTICE OF LIEN**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Project for Social Justice, Inc.
208 S. LaSalle Street, Suite #1650
Chicago, Illinois 60604
Phone - (312) 345-1004
Fax – (312) 346-3242
al@alhofeldlaw.com
alhofeldlaw.com

1

08CV2122 EDA
JUDGE CONLON
MAGISTRATE JUDGE VALDEZ

# EXHIBIT A

Loan # 0023318124

Loan Number: 521060551  Servicing Number: 00233181[illegible] Date: 07/26/07

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

[illegible] S. EUCLID AVE, CHICAGO, IL 60617-[illegible]
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $164,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Option One Mortgage Corporation, a California Corporation. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of [illegible].[illegible]%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on September, 01, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 01, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at OPTION ONE MORTGAGE CORPORATION P.O. BOX [illegible] LOS ANGELES, CA [illegible] or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $[illegible].52. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Application of Payments**

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of August, 20[illegible], and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE percentage point(s) ( 5.000% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL

Loan Number: 52[illegible] Servicing Number: 46[illegible] Date: 07/26/07

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than [illegible].250% or less than 5.000%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and a half percentage points (1.5%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 15.150% or less than 5.000%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

(C) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. HAZARD OR PROPERTY INSURANCE

Unless I provide Note Holder with evidence of the insurance coverage required by my agreement with Note Holder, Note Holder may purchase insurance at my expense to protect Note Holder's interest in my collateral. This insurance may, but need not, protect my interests. The coverage that Note Holder purchases may not pay any claim that I make or any claim that is made against me in connection with collateral. I may later cancel any insurance purchased by Note Holder, but only after providing Note Holder with evidence that I have obtained insurance as required by our agreement. If Note Holder purchases insurance for the collateral, I will be responsible for the costs of that insurance, including interest and any other charges Note Holder my impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance I may be able to obtain on my own.

9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

[illegible]



Loan Number: 021060663 Servicing Number: [illegible] Date: 07/26/04

10. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

11. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

12. **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

______________________ (Seal) -Borrower
BARBARA [illegible]

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower

[Sign Original Only]

# EXHIBIT B

WHEN RECORDED MAIL TO:

Prepared by:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

Loan Number: 521060551
Servicing Number: 002311812-4

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on July 26, 2007. The mortgagor is BARBRA LITTLETON, AN UNMARRIED WOMAN

("Borrower").

This Security Instrument is given to Option One Mortgage Corporation, a California Corporation, which is organized and existing under the laws of CALIFORNIA, and whose address is 3 Ada, Irvine, CA 92618 ("Lender").

Borrower owes Lender the principal sum of ONE HUNDRED FOUR THOUSAND AND NO/100THS Dollars (U.S. $104,000.00).

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on August 01, 2037. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Cook County, Illinois:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

Permanent Real Estate Index Number: 20-36-314-024-0000

which has the address of 8402 S BUCLID AVE, CHICAGO [Street, City], Illinois 60617-2360 [Zip Code] ("Property Address");

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this

 [illegible]

Loan Number: 321060682 Servicing Number: 003331812-4 Date: 07/26/07

Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument: (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights

or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph

Loan Number: 521069551 Servicing Number: 002331827-4 Date: 07/26/07

12. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any



governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

**23. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**24. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

**25. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

**26. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**27. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**28. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

Loan Number: 621069551 Servicing Number: 0423318124 Date: 07/24/97

29. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. **Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan Document, and may be treated for all purposes as the original copy of such Loan Document.

31. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

32. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

[X] Adjustable Rate Rider
[ ] No Prepayment Penalty Option Rider
[ ] Other(s) (specify)
[ ] Condominium Rider
[ ] Planned Unit Development Rider
[ ] 1-4 Family Rider
[ ] Occupancy Rider
[ ]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_______________________ _______________________

Barbara Littleton (Seal)
BARBARA LITTLETON -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

Loan Number: 621469561 Servicing Number: 002331812-1 Date: 07/24/07

STATE OF ILLINOIS, County ss: Cook

I, Erica Vilella, a Notary Public in and for said county and state do hereby certify that

Barbara Littleton

, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that she signed and delivered the said instrument as her free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 26 day of July 2007.

My Commission Expires: 11/22/07

[signature]
Notary Public

 ILD10018 (05-31-05)



# LEGAL DESCRIPTION ATTACHMENT

LOT 2 AND LOT 3 (EXCEPT THE SOUTH 20 FEET OF SAID LOT 3) IN BLOCK 8 IN CONSTANCE, A SUBDIVISION BY WALLACE C. CLEMENT OF THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 36, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

Property Identification Number: 20-36-314-024-0000

Address of Property (for identification purposes only):

Street: 8401 SOUTH EUCLID AVENUE
City, State: CHICAGO, Illinois
Unit/Lot: 2 AND 3
Condo/Subdiv: CONSTANCE, A SUBDIVISION BY WALLACE C. CLEMENT

Loan Number: [illegible] Servicing Number: [illegible] Date: 07/26/07

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made July 26, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

[illegible] S EUCLID AVE, CHICAGO, IL 60617-[illegible]

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of 9.750%. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of August 01, 2010, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE percentage point(s) ( 5.000% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

Loan Number: 521060551 Servicing Number: 002311212-4 Date: 07/26/07

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.250% or less than 9.000% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and a half percentage points (1.5%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 15.750% or less than 5.000% .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan Number: 571040551 Servicing Number: 092331812-4 Date: 07/26/07

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____________________(Seal)
BARBARA LITTLETON

_____________________(Seal)

_____________________(Seal)

_____________________(Seal)

_____________________(Seal)

_____________________(Seal)

# EXHIBIT C

OMB No. 2502-0265

**A. U.S. Department of Housing and Urban Development**

**Settlement Statement**

| B. Type of Loan | | |
|---|---|---|
| 1. [ ] FHA | 2. [ ] FmHA | 3. [ ] Conv. Unins. |
| 4. [ ] VA | 5. [ ] Conv. Ins. | [X] Other |
| 6. File Number: 48153 | 7. Loan Number: [illegible] | |
| 8. Mortgage Ins. Case No. | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. Name of Borrower: [illegible] LITTLETON

E. Name of Seller:

F. Name of Lender: OPTION ONE MORTGAGE CORP., 3 ADA, IRVINE, CA 92618

G. Property Location: LOT [illegible] CONSTANCE, A SUBDIVISION BY WALLACE C. CLEMENT [illegible]
8440 SOUTH EUCLID AVENUE, CHICAGO, IL 60617

H. Settlement Agent: Attorneys' Title Services, Inc. [illegible] Title: [illegible]
Place of Settlement: [illegible] Drive, Suite [illegible], Schaumburg, IL 60173

I. Settlement Date: [illegible] Funding Date: [illegible]

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross amount due from borrower: | | 400. Gross amount due to seller: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 14,[illegible] | 403. | |
| 104. MTG PD TO EMC MORTGAGE CORP | 23,[illegible] | 404. | |
| 105. MTG PD TO [illegible] SERVICING CORPORATION | 41,[illegible] | 405. | |
| Adjustments for items paid by seller in advance: | | Adjustments for items paid by seller in advance: | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross amount due from borrower | 78,[illegible] | 420. Gross amount due to seller | 0.00 |
| 200. Amounts paid by or in behalf of borrower: | | 500. Reductions in amount due to seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 104,000.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller: | | Adjustments for items unpaid by seller: | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total paid by/for borrower | 104,000.00 | 520. Total reduction in amount due seller | 0.00 |
| 300. Cash at settlement from/to borrower: | | 600. Cash at settlement to/from seller: | |
| 301. Gross amount due from borrower (line 120) | 78,[illegible] | 601. Gross amount due to seller (line 420) | 0.00 |
| 302. Less amount paid by/for borrower (line 220) | 104,000.00 | 602. Less total reductions in amount due seller (line 520) | 0.00 |
| 303. CASH [illegible] TO BORROWER | [illegible] | 603. CASH [illegible] SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - [illegible]

SELLER INSTRUCTIONS - [illegible]

[illegible]

| L. Settlement Charges | | File Number [illegible] | |
|---|---|---|---|
| Line | Description | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
| 700. | Total sales/broker commission | | |
| | Division of commission (line 700) as follows: | | |
| 701. | $ | | |
| 702. | $ | | |
| 703. | Commission paid at settlement | | |
| 704. | | | |
| 800. | Items payable in connection with loan | | |
| 801. | Loan origination fee | | |
| 802. | Loan discount to OPTION ONE MORTGAGE (1%) | [illegible],040.00 | |
| 803. | Appraisal fee to WALL STREET MORTGAGE ACCEPTANCE CORP | 400.00 | |
| 804. | Credit report | | |
| 805. | Lender's inspection fee | | |
| 806. | Mortgage insurance application fee | | |
| 807. | Assumption fee | | |
| 808. | PROCESSING FEE to WALL STREET MORTGAGE ACCEPTANCE COR | [illegible] | |
| 809. | APPLICATION FEE to WALL STREET MORTGAGE ACCEPTANCE COR | [illegible] | |
| 810. | BROKER FEE to WALL STREET MORTGAGE ACCEPTANCE COR | 2,[illegible] | |
| 811. | TAX SERVICE FEE to [illegible] SERVICES LLC | [illegible] | |
| 812. | FUNDING FEE to OPTION ONE MORTGAGE CORP. | [illegible] | |
| 813. | UNDERWRITING FEE to OPTION ONE MORTGAGE CORP. | [illegible] | |
| 814. | FLOOD CERT FEE to [illegible] | [illegible] | |
| 900. | Items required by lender to be paid in advance | | |
| 901. | Interest from [illegible] to [illegible] @ [illegible]/day for 1 days | [illegible] | |
| 902. | Mortgage insurance premium for | | |
| 903. | Hazard insurance premium for 1 yrs. to ALLSTATE INSURANCE | [illegible] | |
| 904. | | | |
| 905. | | | |
| 1000. | Reserves deposited with lender | | |
| 1001. | Hazard insurance 3 mos @ $[illegible] per mo. | [illegible] | |
| 1002. | Mortgage insurance | | |
| 1003. | City property taxes | | |
| 1004. | County property taxes [illegible] mos @ $[illegible] per mo. | [illegible] | |
| 1005. | Annual assessments (maint.) | | |
| 1006. | | | |
| 1007. | | | |
| 1008. | | | |
| 1011. | AGGREGATE ADJUSTMENT to OPTION ONE MORTGAGE CORP. | [illegible] | |
| 1100. | Title charges | | |
| 1101. | Settlement or closing fee to Absolute Title Services, Inc. | [illegible] | |
| 1102. | Abstract or title search | | |
| 1103. | Title examination | | |
| 1104. | Title insurance binder | | |
| 1105. | Document preparation | | |
| 1106. | Notary fees | | |
| 1107. | Attorney's fees to | | |
| | (includes above items no.: | | |
| 1108. | Title insurance to Absolute Title Services, Inc | [illegible] | |
| | (includes above items no.: | | |
| 1109. | Lender's coverage $[illegible] $[illegible] | | |
| 1110. | Owner's coverage | | |
| 1111. | EPA/COMP ENDORSEMENTS | | |
| 1112. | [illegible] PROCESSING FEE to Absolute Title Services, Inc | [illegible] | |
| 1113. | [illegible] WIRE FEE to Absolute Title Services, Inc | [illegible] | |
| 1114. | CONTRACT CLOSER to [illegible] POC [illegible] | | |
| 1115. | OVERNIGHT CUSTOMER FUNDS to Absolute Title Services, Inc | [illegible] | |
| 1116. | | | |
| 1117. | | | |
| 1118. | | | |
| 1119. | | | |
| 1120. | | | |
| 1121. | | | |
| 1200. | Government recording and transfer charges | | |
| 1201. | Recording fees: Mortgage $[illegible] | [illegible] | |
| 1202. | City/county tax/stamps: | | |
| 1203. | State tax/stamps: | | |
| 1204. | | | |
| 1205. | | | |
| 1206. | [illegible] RECORDING [illegible] to Absolute Title Services, Inc | [illegible] | |
| 1300. | Additional settlement charges | | |
| 1301. | Survey | | |
| 1302. | Pest inspection | | |
| 1303. | TI FEE to Absolute Title Services, Inc | [illegible] | |
| 1304. | TI FOR 2ND INSTALL [illegible] TAXES to Absolute Title Services, Inc | [illegible] | |
| 1305. | POLICY REGISTRATION to THE STATE OF [illegible] | [illegible] | |
| 1306. | [illegible] TO ABN AMRO to ABN AMRO | [illegible] | |
| 1400. | Total settlement charges (enter on lines 103, Section J and 502, Section K) | [illegible] | |

[illegible] FAX [illegible]

[illegible]

BARBARA LITTLETON

To the best of my knowledge, the HUD-1 Settlement Statement [illegible]

7-26-07

[illegible] Date

[illegible]

Title Company, [illegible]

[illegible]

BARBARA LITTLETON

[illegible]

# EXHIBIT D

Loan Number: [illegible] Servicing Number: [illegible] Date: 07/26/07

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (REAL ESTATE)

Provisions preceded by a box (☐) are applicable only if the box is marked.

☐ PRELIMINARY ☒ FINAL

LENDER (Creditor): Option One Mortgage Corporation
3000 Golf Road, Suite 300
Rolling Meadows, IL 60008

Borrower(s) Name(s): BARBARA LITTLEJOHN

Address: [illegible] S EUCLID AVE
CHICAGO, IL [illegible]

Loan Type: CONVENTIONAL
Loan Program: [illegible]

Property Address: [illegible] S EUCLID AVE
CHICAGO, IL [illegible]

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| [illegible].772 % | $[illegible],[illegible].86 | $[illegible],[illegible].63 | $[illegible],[illegible].69 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 36 payments of $[illegible].62 monthly, beginning Sep 01, 2007 | | |
| 323 payments of $[illegible].45 monthly, beginning Sep 01, 2010 | | |
| 1 payment of $[illegible] on Aug 01, 2037 | | |

VARIABLE RATE:

☒ This transaction is subject to a Variable-Rate Feature. Disclosures about Variable-Rate Feature have been provided to you earlier.

The current index used for this calculation is [illegible].

SECURITY:
You are giving a security interest in the Property located at: [illegible] S EUCLID AVE
CHICAGO, IL 60617-2260

LATE CHARGE:
If you are more than FIFTEEN days late in making any payment, you will pay a late charge of ☐ the lesser of ☐ the greater of ☒ an amount equal to ☐ $ ☐ 5.000 % of the overdue payment of principal and interest.

INSURANCE:
You may obtain property insurance from anyone you want that is acceptable to Lender.

FILING/RECORDING FEES:
☒ $ [illegible]

PREPAYMENT:
If you pay off early, you
☐ may ☒ will not have to pay a fee.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

ASSUMPTION:
Someone buying your home,
☐ cannot assume the remainder of the mortgage on the original terms.
☒ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties, and creditor's policy regarding assumption of the obligation.
"e" means estimate.

☐ Please refer to the "Good Faith Estimate" for an itemization of Amount Financed.
☒ Please refer to the Itemization of Amount Financed Statement.

I/We have received and read a copy of this disclosure and the documents referred to in this disclosure.

Barbara Littlejohn 7-26-07

Borrower BARBARA LITTLEJOHN Date Borrower Date

Borrower Date Borrower Date

Borrower Date Borrower Date

[illegible]

# EXHIBIT E

**LAW OFFICES OF AL HOFELD, JR., LLC**
**208 S. LaSalle Street, Suite #1650**
**Chicago, Illinois 60604**
**Phone - 312-345-1004**
**Fax - 312-346-3242 (FAX)**
**Email: al@alhofeldlaw.com**

April 7, 2008

**BY HAND DELIVERY:**

Option One Mortgage Corporation
C/o registered agent,
CT Corporation System
208 South LaSalle Street, Suite 814
Chicago, IL 60604

Option One Mortgage Services, Inc.
C/o registered agent,
CT Corporation System
208 South LaSalle Street, Suite 814
Chicago, IL 60604

Re: Notice of TILA rescission, claim and lien for Barbara Littleton, 8402 South Euclid Avenue, Chicago, IL 60617-2260; loan of July 26, 2007, originated by Option One Mortgage Corporation

Ladies/Gentlemen:

The above client hereby gives notice that she rescinds the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above client to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to your obligation under 15 U.S.C. §1641(f)(2).

Finally, please provide a complete account history so that we may compute the appropriate tender amount.

Sincerely,

Al Hofeld, Jr.

Cc: client

I, Al Hofeld, Jr., under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document hand delivered to the listed addressees on April 8, 2008.

Al Hofeld, Jr